UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLA S. SEKULA,<br><br>Plaintiff,<br><br>v.<br><br>FCA US LLC, a Delaware Limited Liability Company, and DOES 1 through 10 inclusive,<br><br>Defendants. | No. 1:17-cv-00460-DAD-JLT<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES IN PART<br><br>(Doc. No. 88) |

This matter came before the court on May 7, 2019 for hearing on plaintiff Carla Sekula's motion for attorneys' fees, costs, and expenses. (Doc. No. 88.) Attorney Sepehr Daghighian appeared telephonically on behalf of plaintiff, and attorney Leon Roubinian appeared telephonically on behalf of defendant FCA UC LLC ("FCA"). The court has considered the parties' briefs and oral arguments and, for reasons set forth below, will grant plaintiff's motion in part.

**BACKGROUND**

On June 20, 2016, plaintiff commenced this action against FCA by filing suit in Tulare County Superior Court. (*See* Doc. No. 1-1.) Plaintiff alleged that a new Dodge Durango that she purchased in 2013 was delivered to her with serious defects and nonconformities to warranty. (*Id.* at 5.) The complaint asserted causes of action for: (1) breaches of express and implied

1

warranties, in violation of the Song-Beverly Act, California Civil Code § 1790 *et seq.*; and (2) fraudulent inducement or concealment. (*Id.* at 25–29.) On March 20, 2017, FCA removed the action to this federal court. (Doc. No. 1.) Thereafter, a February 26, 2019 trial date was set. (Doc. No. 10.)

On February 25, 2019, the parties informed the court that they had reached a settlement. (Doc. No. 78.) Pursuant to Federal Rule of Civil Procedure 68, FCA offered to allow judgment to be entered against it and in favor of plaintiff in the sum of $142,000.00 to be paid to plaintiff. (Doc. No. 79 at 2.) Plaintiff accepted the Rule 68 offer. (*Id.* at 4.) The offer noted that FCA would provide plaintiff with "attorney's fees based on actual time reasonably incurred in connection with . . . this action . . ., to be determined by the court if the parties cannot agree." (*Id.* at 2.)

Apparently unable to agree on the appropriate amount of attorney's fees to be paid to plaintiff's counsel, on April 8, 2019, plaintiff filed the pending motion for attorneys' fees, costs, and expenses. (Doc. No. 88.) On April 23, 2019, FCA filed its opposition to the pending motion, and on April 30, 2019, plaintiff filed her reply thereto. (Doc. Nos. 89, 90.)

**LEGAL STANDARD**

Under California's Song-Beverly Act, "if [a] buyer prevails in an action . . ., the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code. § 1794(d). "The plain wording of the statute requires the trial court to base the fee award upon actual time expended on the case, as long as such fees are *reasonably* incurred—both from the standpoint of time spent and the amount charged." *Robertson v. Fleetwood Travel Trailers of CA, Inc.*, 144 Cal. App. 4th 785, 817 (2006).

> It requires the trial court to make an initial determination of the actual time expended; and then to ascertain whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable. These circumstances may include, but are not limited to,

2

> factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved. If the time expended or the monetary charge being made for the time expended are not reasonable under all the circumstances, then the court must take this into account and award attorney fees in a lesser amount. A prevailing buyer has the burden of showing that the fees incurred were allowable, were reasonably necessary to the conduct of the litigation, and were reasonable in amount.

*Nightingale v. Hyundai Motor Am.*, 31 Cal. App. 4th 99, 104 (1994) (citation and internal quotation marks omitted); *see also Goglin v. BMW of North America, LLC*, 4 Cal. App. 5th 462, 470 (2016). Under a contingent fee arrangement, "a prevailing buyer represented by counsel is entitled to an award of reasonable attorney fees for time reasonably expended by his or her attorney." *Nightingale,* 31 Cal. App. 4th at 105 n.6.

"The determination of what constitutes a reasonable fee generally begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 154 (2006) (quoting *PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1095 (2000)). The court will apply the lodestar method to the Song-Beverly Act because "the statutory language of section 1794, subdivision (d), is reasonably compatible with a lodestar adjustment method of calculating attorney fees, including use of fee multipliers." *Robertson*, 144 Cal. App. 4th at 818; *see also Warren v. Kia Motors America, Inc.*, 30 Cal. App. 5th 24, 35 (2018). Moreover, because "[the California] Supreme Court has held that the lodestar adjustment method is the prevailing rule for statutory attorney fee awards to be applied in the absence of clear legislative intent to the contrary, [the lodestar adjustment method] . . . is applicable to attorney fee awards under section 1794, subdivision (d)." *Robertson*, 144 Cal. App. 4th at 818–19 (citing *Ketchum v. Moses*, 24 Cal. 4th 1122, 1135–36 (2001); *see also Warren*, 30 Cal. App. at 35–36.).

> [T]he lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or

> required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services.
>
> * * *
>
> As we [have] explained . . .: " '[a] contingent fee contract, since it involves a gamble on the result, may properly provide for a larger compensation than would otherwise be reasonable.' "

*Ketchum*, 24 Cal. 4th at 1132 (internal citation omitted).

If a fee request is opposed, "[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." *Etcheson v. FCA US LLC*, 30 Cal. App. 5th 831, 848 (2018) (quoting *Premier Med. Mgmt. Sys. v. Cal. Ins. Guarantee Assoc.*, 163 Cal. App. 4th 550, 564 (2008)). Instead, the opposing party must demonstrate that the hours claimed are duplicative or excessive. *Premier Med. Mgmt. Sys.*, 163 Cal. App. 4th at 562, 564; *see also First American Title Ins. Co v. Spanish Inn, Inc.*, 239 Cal. App. 4th 598, 606 (2015) ("Although defendants *argued* to the trial court that the 'amount claimed for attorneys fees is not reasonable,' defendants did not respond to First American's evidence with evidence of their own, as required."); *Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 101 (2009) ("The party opposing the fee award can be expected to identify the particular charges it considers objectionable.").

With this guidance in mind, the court turns to consider plaintiff's pending motion.[1]

**ANALYSIS**

Plaintiff, as the auto buyer who prevailed in this suit, is entitled to reasonably incurred attorneys' fees, costs, and expenses. *See* Cal. Civ. Code § 1794(d). Here, plaintiff seeks: (1) an award of attorneys' fees in the amount of $67,627.50; (2) a lodestar multiplier of 0.5, in the amount of $33,813.75; and (3) an award of actual costs and expenses incurred in the amount of $22,488.21. (Doc. No. 88-1 at 7.) Plaintiff seeks a total award of $123,929.46. (*Id.*) FCA contends that the lodestar requested by plaintiff is unreasonable and that an upward multiplier is

/////

---

[1] Each party objects to evidence presented by the other in support of or in opposition to the pending motion. The court has read and considered these boilerplate evidentiary objections and, to the extent that the court considers any such evidence to which an objection has or objections have been made, those objections are overruled.

4

not warranted in this case. (Doc. No. 89 at 6.) FCA also objects to various costs and expenses for which plaintiff seeks reimbursement. (Doc. No. 87.)

**A.     Attorneys' Fees Request**

Plaintiff was represented by two law firms in this matter: the Knight Law Group ("Knight Law"), who commenced this action on plaintiff's behalf and provided legal services leading up to trial, and Hackler Daghighian Martino & Novak, P.C. ("HDMN"), who associated into this action to provide services relating to and in anticipation of the trial of this matter. (Doc. No. 88-1 at 14.) Knight Law billed a total of $38,652.50 and HDMN billed a total of $28,975.00. (*Id.*)

       1.     <u>Number of Hours to be Awarded</u>

The billing records indicate that Knight Law attorneys expended 103.5 billable hours on this action and that HDMN attorneys expended 79.25 billable hours on this action. (Doc. Nos. 88-2 at 28; 88-3 at 8–12.) A total of ten Knight Law attorneys and a total of three HDMN attorneys billed in this matter. (Doc. Nos. 88-2 at 28; 88-3 at 8–12.)

FCA contends that the number of hours billed by both law firms are unreasonable. First, FCA argues that it made two offers to settle this matter—one in July 2016 and one in January 2019—and therefore any attorneys' fees incurred by plaintiff after either offer were not "reasonably incurred" because plaintiff could have accepted either offer and resolved this matter, instead of having her attorneys expend additional hours on it. (Doc. No. 89 at 4–5.) Second, FCA contends plaintiff's use of "two firms and a total of 13 attorneys" resulted in an "inherent duplication of effort . . ., the cost of which should not be borne by Defendant." (*Id.* at 7) (emphasis omitted). FCA therefore asks the court to "exclude either the $38,652.50 incurred by [Knight Law], or the $28,975.00 incurred by HDMN." (*Id.*) (emphasis omitted). Third, FCA asks the court to reduce the total number of hours attributed to HDMN lawyers due to the firm's practice of billing in quarter-hour increments. (*Id.* at 9.) The court addresses each of FCA's arguments in turn.

With respect to whether attorney time expended after FCA's July 2016 and January 2019 settlement offers to plaintiff are unreasonable, the court first notes that FCA has failed to provide the court with authority that supports its position that plaintiff not accepting those offers requires

5

discounting the hours expended in litigating this matter after those offers were made. As already discussed, the law requires this court to first determine the actual amount of time expended by the attorneys in this matter, and to then determine whether such an investment of time was reasonable. Moreover, the court finds that it appears plaintiff was later shown to be justified in rejecting the July 2016 and January 2019 settlement offers because her "ultimate settlement [of $142,000.00] exceeded FCA's prior January 30, 2019 Rule 68 Offer by $42,000.00, and its July 2016 section 998 offer by $79,000.00." (Doc. No. 90 at 7.) The court notes that neither of FCA's earlier offers accounted for the civil penalties available under the Song-Beverly Act, which was a remedy that plaintiff sought in this action. Indeed, plaintiff's attorney Steve Mikhov of Knight Law avers that his firm has accepted early settlement offers from FCA in other cases where such offers recognized the allegedly willful conduct of FCA in selling defective vehicles to California consumers. (Doc. Nos. 90 at 10; 90-1 at 2, 5–48.)

FCA also contends that $6,118.75—the amount in fees incurred by HDMN after having received FCA's February 21, 2019 Rule 68 offer—should be discounted because plaintiff's counsel "did not even review and analyze this offer until February 25, 2019." (Doc. No. 89 at 8.) The court is not persuaded by this argument. HDMN's billing records indicate that HDMN "[r]eceive[d] and review[ed] [the] defense Rule 68 Offer of Judgment" on February 21, 2019 and "forward[ed] the same to co-counsel and client." (Doc. No. 88-3 at 11.) Thus, the Rule 68 offer was served on and received by plaintiff a mere five days before the date set for trial, February 26, 2019.[2] The court will not fault HDMN for continuing to prepare for trial while plaintiff considered defendant's February 21 offer, especially because that offer was essentially made on the eve of trial, and a prudent attorney must continue to prepare for trial until and unless the client confirms that they wish to accept a settlement offer.

Next, defendant argues that plaintiff's employment of two law firms and thirteen lawyers to litigate this matter was unreasonable. (Doc. No. 89 at 7, 11.) Here, too, FCA has failed to

---

[2] Despite the fact that a Rule 68 offer must be served at least fourteen days before the date set for trial, the parties here stipulated to waiving the fourteen-day service period required by the rule. (*See* Doc. No. 82.)

6

provide any authority in support of its position that solely based upon the employing of two law firms who assign multiple lawyers to a case, this court could reduce the number of hours expended when considering an award for attorneys' fees. To the contrary, it has been "recognized that 'the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort.'" *McGrath v. County of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995) (citing *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir.1989)). Moreover, FCA has not identified any entries in Knight Law and HDMN's billings that indicate a duplication of effort. FCA merely contends that some of HDMN's time entries—e.g., 1.5 hours for reviewing repair orders and parties' document production; 0.5 hours for telephonic conference with plaintiff; and 1.5 hours to review the case file—are "[e]xamples of inherent duplication by HDMN." (Doc. No. 89 at 7.) However, the fact that lawyers at HDMN had to review files and get up to speed on the case to prepare it for trial does not constitute a duplication of effort since they were brought into the case to represent plaintiff at trial and necessarily had to review files to do so.

Finally, FCA contends that HDMN's total hours billed should be reduced across-the-board, because the firm billed its time entries in quarter-hour increments. (Doc. Nos. 89 at 9; 88-3 at 8–12.) A court may impose an across-the-board reduction on hours that are billed by quarter-hour increments when such billing results in an attorney's fees award request reflecting excessive hours. *See, e.g.*, *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007) (affirming district court's twenty percent, across-the-board reduction of hours where this billing practice resulted in inflated time records). In *Welch*, the Ninth Circuit affirmed the district court's across-the-board reduction in hours after the district court had found that "the hours were inflated because counsel billed a minimum of 15 minutes for numerous phone calls and e-mails that likely took a fraction of the time." *Id.* The Ninth Circuit's own review of the time records in *Welch* revealed that they were "replete with quarter-hour or half-hour charges for the drafting of letters, telephone calls and intra-office conferences." *Id.* Here, the court also finds that HDMN's practice of billing by quarter-hour increments likely resulted in an inflated amount of attorney time being billed to this matter. For example, HDMN's billing statement indicates various email and telephonic correspondences between HDMN lawyers and opposing counsel, inter-office

meetings, and correspondences with the court, plaintiff, and expert witnesses that were billed a minimum of fifteen or thirty minutes. (Doc. No. 88-3 at 8–12.) The court finds that these time entries are likely inflated "because counsel billed a minimum of 15 minutes for numerous phone calls and e-mails that likely took a fraction of the time." *Welch*, 480 F.3d at 949. The court will therefore exercise its discretion and apply a twenty-percent, across-the-board reduction to the number of hours awarded to HDMN attorneys in this case. *See Hall v. FCA US LLC*, No. 1:16-cv-0684-JLT, 2018 WL 2298431, at *5 (E.D. Cal. May 21, 2018) (Applying a twenty-percent, across-the-board reduction to HDMN's hours billed in quarter-hour increments for similar reasons).

The court has also reviewed the Knight Law billing statements at issue here and concludes that, generally, the time billed was reasonably incurred in the commencement and prosecution of this action. However, the court will not award attorney Christopher Thoms the full five hours he anticipatorily billed to prepare for and appear at the hearing for this motion (Doc. No. 88-2 at 28), because he appeared telephonically and did not travel to Fresno for that hearing. Moreover, the court will not award attorney Thoms the full four and a half hours that he anticipatorily billed to review and analyze FCA's opposition to this motion and to draft a reply thereto. (*Id.*) No evidence of the time actually spent on these tasks was presented to the court, and the court declines to speculate as to the actual time spent by counsel in reviewing defendant's opposition, drafting a reply, and preparing for and arguing the motion, as the burden is on the applicant to present evidence to support the motion for attorney's fees. Accordingly, attorney Thoms' hours will be reduced by eight hours. Based on the foregoing, the court will include in the award the following hours to the Knight Law attorneys:

/////
/////
/////
/////
/////
/////

8

| Knight Law Attorney | Hours Requested | Hours Awarded |
|---|---|---|
| Attorney Alastair Hamblin | 7.6 | 7.6 |
| Attorney Amy Morse | 10.6 | 10.6 |
| Attorney Christopher Thoms | 16 | 8 |
| Attorney Deepak Devabose | 8.4 | 8.4 |
| Attorney Diane Hernandez | 18.0 | 18.0 |
| Attorney Kristina Stephenson-Cheang | 13.8 | 13.8 |
| Attorney Mitchell Rosensweig | 2.1 | 2.1 |
| Attorney Michelle Lumasag | 3.5 | 3.5 |
| Attorney Russell Higgins | 16.7 | 16.7 |
| Attorney Steve Mikhov | 6.8 | 6.8 |
| Total Hours | 103.5 | 95.5 |

The court has also reviewed the HDMN billing statements at issue here and concludes that, generally, the time billed was reasonably incurred in the commencement and prosecution of this action. However, as discussed above, the court will exercise its discretion and apply a twenty-percent across-the-board reduction to HDMN's billed hours due to HDMN's practice of billing in quarter-hour increments even with respect to various emails and telephone conversations between HDMN lawyers and opposing counsel, inter-office meetings, and correspondences with the court, plaintiff, and expert witnesses when those tasks almost certainly consumed only a fraction of the time billed. Accordingly, the court finds the following hours appropriately attributable to the efforts of HDMN attorneys:

| HDMN Attorney/Paralegal | Hours Requested | Hours Awarded |
|---|---|---|
| Attorney Larry Castruita | 10.75 | 8.6 |
| Attorney Sepehr Daghighian | 27.5 | 22.0 |
| Attorney Eric Schmitt | 37.0 | 29.6 |
| Paralegal Andrea Plata | 4 | 3.2 |
| Total Hours | 79.25 | 63.4 |

2. <u>Hourly Rates to be Applied</u>

Next, the court must determine whether the hourly rates requested by plaintiff's attorneys are reasonable.

Under California law, when awarding attorney's fees under § 1794(d), the relevant inquiry is whether "the monetary charge being made for the time expended [is] reasonable" under all the circumstances including "factors such as the complexity of the case and procedural demands, the

skill exhibited and the results achieved." *Goglin v. BMW of North America, LLC,* 4 Cal. App. 5th 462, 470 (2016) (quoting *Nightingale,* 31 Cal.App.4th at 104). California courts therefore focus on the reasonable hourly rate for the work performed by the counsel performing that work, regardless of the forum in which that work was performed and without regard to typical hourly rates in the forum in which the matter was litigated.[3] *See Goglin*, 4 Cal. App. 5th at 470 (affirming a fee award applying a hourly rate of $575 per hour in a Song-Beverly Act case on the grounds that the trial court had considered the evidence that the client agreed to compensate counsel at the rate of $575 an hour (later increased to $625), other state and federal courts had awarded the attorney comparable rates in similar cases, and the trial court had observed the

---

[3] The court is aware that, in awarding attorneys' fees under the Song-Beverly Act, other district courts have required "[t]he fee applicant . . . [to] produc[e] satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Base v. FCA US LLC*, No. 17-cv-01532-JCS, 2019 WL 4674368, at *4 (N.D. Cal. Sept. 25, 2019) (citing *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987)); *see also Self v. FCA US LLC*, No. 1:17-cv-01107-SKO, 2019 WL 1994459, at *4–5 (E.D. Cal. May 6, 2019); *Hall v. FCA US LLC*, No. 1:16-cv-0684-JLT, 2018 WL 2298431, at *5–6 (E.D. Cal. May 21, 2018). Citing to Ninth Circuit and Supreme Court precedent, these courts have stated that the "relevant community" in determining a prevailing market rate is the forum in which the district court sits and then analyzed whether the rates requested by counsel are reasonable in light of rates paid to attorneys of similar skill and experience in the forum district. *See, e.g.*, *Self*, 2019 WL 1994459, at *4–6. This, however, is the framework that federal courts apply to motions seeking attorneys' fees pursuant to a federal statute. The court is aware of no authority holding that a federal court must apply that same framework when awarding attorneys' fees pursuant to the Song-Beverly Act, a California statute. Indeed, the California Court of Appeal in *Goglin* did not engage in that forum-based rate analysis and, as evidenced by the many state court fee orders that the parties have pointed this court to, state courts generally do not engage in that analysis. The undersigned, therefore, considers the pending motion under the standard articulated by the California Court of Appeal in *Goglin* and will determine "whether the monetary charge being made for the time expended [is] reasonable" in light of "the complexity of the case and procedural demands, the skill exhibited and the results achieved." 4 Cal. App. 5th at 470 (internal quotation marks and citation omitted). This approach will appropriately result in plaintiff's counsel being compensated at the same hourly rates they would have received in state court rather than some lower rate based solely on the removal of the action to federal court. Finally, even if the rate determination framework utilized in motions seeking attorneys' fees pursuant to federal statutes were to apply in this case, the court notes that the hourly rates found to be reasonable by this order would be the same under that framework. For, under the "relevant community"/"forum district" analysis, this court would look to the orders of state courts within the Eastern District of California and conclude that those same rates are consistent with those prevailing in the community for similar services. *See Tenorio v. Gallardo*, No. 1:16-cv-00283-DAD-JLT, 2019 WL 3842892, at *2 n.1 (E.D. Cal. Aug. 15, 2019).

attorney's skills first hand, while not even mentioning the prevailing rates in the trial court's area); *see also Filiberto Negrete v. Ford Motor Co. et al.*, No. ED CV 18-1972-DOC (KKx), 2019 WL 4221397, at *3 (C.D. Cal. June 5, 2019) ("Plaintiff has demonstrated that counsel has been awarded attorneys' fees at similar rates under the Song-Beverly Act. [citation omitted.] Such evidence is generally sufficient to show that an attorney's hourly rates are reasonable."). The fee applicant bears the burden of producing satisfactory evidence that the fees incurred were "reasonable in amount." *Goglin*, 4 Cal. App. 5th at 470 (quoting *Nightingale*, 31 Cal. App. 4th at 104); *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

The Knight Law attorneys request the following hourly rates for its attorneys who worked on this matter:

| Knight Law Attorney | Requested Hourly Rate | Years of Experience |
|---|---|---|
| Attorney Alastair Hamblin | $325.00 | 3 years |
| Attorney Amy Morse | $350.00 | 6 years |
| Attorney Christopher Thoms | $350.00 | 14 years |
| Attorney Deepak Devabose | $275.00 | 5 years |
| Attorney Diane Hernandez | $375.00 | 22 years |
| Attorney Kristina Stephenson-Cheang | $375.00 | 11 years |
| Attorney Mitchell Rosensweig | $325.00 | 1 year |
| Attorney Michelle Lumasag | $200.00 | 4.5 years |
| Attorney Russell Higgins | $450.00 | 16 years |
| Attorney Steve Mikhov | $550.00 | 16 years |

(Doc. No. 88-2 at 8–10, 28.) The HDMN request the following hourly rates for its attorneys who worked on this matter:

| HDMN Attorney or Paralegal | Requested Hourly Rate | Years of Experience |
|---|---|---|
| Attorney Larry Castruita | $350.00 | 8 years |
| Attorney Sepehr Daghighian | $400.00, $550.00 | 14 years |
| Attorney Erik Schmitt | $250.00, $275.00 | 2 years |
| Paralegal Andrea Plata | $75.00 | 2 years |

(Doc. No. 88-3 at 2–4, 8.)

In support of the rates requested by her attorneys, plaintiff has submitted the declarations of attorneys Daghighian and Mikhov and rate determinations in other cases for some of the attorneys at issue. (Doc. Nos. 88-2, 88-3.) These declarations both state the rates that these

11

attorneys and other lawyers from their respective firms charged in this matter and aver that the requested rates are reasonable. (*See* Doc. No. 88-2 at 7–11; 88-3 at 2–4.) Attached to attorney Mikhov's declaration and supplemental declaration are several hourly rate determinations by state courts in Song-Beverly Act actions with respect to some of the attorneys who worked on this case. (*See* Doc. Nos. 88-2 at 94–155; 94-1 at 67–143.) FCA has also attached to its supplemental briefing hourly rate determinations by state courts in Song-Beverly Act actions where some of the attorneys at issue have been awarded rates lower than those requested by them here. (*See* Doc. No. 95 at Exs. A–H.) These attachments demonstrate that various superior courts in California have awarded the following rates in Song-Beverly Act actions to the following attorneys at issue here: attorney Mikhov has been awarded hourly rates between $300.00 and $500.00; attorney Higgins has been awarded hourly rates between $350.00 and $400.00; attorney Morse has been awarded hourly rates between $250.00 and $400.00; attorney Stephenson-Cheang has been awarded hourly rates between $300.00 and $350.00; attorney Hamblin has been awarded an hourly rate of $325.00; attorney Hernandez has been awarded an hourly rate of $350.00; attorney Devabose has been awarded hourly rates between $200.00 and $250.00; and attorney Lumasag has been awarded an hourly rate of $200.00.

Because "the reasonable value of attorney services is variously defined as the hourly amount to which attorneys of like skill in the area would typically be entitled," *Ketchum*, 24 Cal. 4th at 1133, the court finds that evidence of what some of the attorneys have previously been awarded when litigating other Song-Beverly actions assists the court in determining what the reasonable hourly rates should be in this case. *See also Goglin*, 4 Cal. App. 5th at 470; *Filiberto Negrete*, 2019 WL 4221397, at *3. Having considered the various state court orders submitted by both plaintiff and FCA as well as other evidence, the court concludes that the following hourly rates as to each of plaintiff's attorneys are reasonable:

/////
/////
/////
/////

| Knight Law Attorney | Hourly Rate to be Awarded | Years of Experience |
|---|---|---|
| Attorney Alastair Hamblin | $325.00 | 3 years |
| Attorney Amy Morse | $350.00 | 6 years |
| Attorney Christopher Thoms | $350.00 | 14 years |
| Attorney Deepak Devabose | $250.00 | 5 years |
| Attorney Diane Hernandez | $350.00 | 22 years |
| Attorney Kristina Stephenson-Cheang | $350.00 | 11 years |
| Attorney Mitchell Rosensweig | $200.00 | 1 year |
| Attorney Michelle Lumasag | $200.00 | 4.5 years |
| Attorney Russell Higgins | $400.00 | 16 years |
| Attorney Steve Mikhov | $500.00 | 16 years |
| **HDMN Attorney or Paralegal** | **Hourly Rate to be Awarded** | **Years of Experience** |
| Attorney Larry Castruita | $300.00 | 8 years |
| Attorney Sepehr Daghighian | $500.00 | 14 years |
| Attorney Erik Schmitt | $250.00 | 2 years |
| Paralegal Andrea Plata | $75.00 | 2 years |

3. <u>Lodestar Calculation</u>

Based on the hours and hourly rates that the court has awarded plaintiff's attorneys, the lodestar here totals $54,630.00. The court's calculations are reflected below:

| Law Firm | Legal Professional | Hours Awarded | Hourly Rate Awarded | Lodestar |
|---|---|---|---|---|
| **Knight Law** | Attorney Alastair Hamblin | 7.6 | $325.00 | $2,470.00 |
| | Attorney Amy Morse | 10.6 | $350.00 | $3,710.00 |
| | Attorney Christopher Thoms | 8 | $350.00 | $2,800.00 |
| | Attorney Deepak Devabose | 8.4 | $250.00 | $2,100.00 |
| | Attorney Diane Hernandez | 18 | $350.00 | $6,300.00 |
| | Attorney Kristina Stephenson-Cheang | 13.8 | $350.00 | $4,830.00 |
| | Attorney Mitchell Rosensweig | 2.1 | $200.00 | $420.00 |
| | Attorney Michelle Lumasag | 3.5 | $200.00 | $700.00 |
| | Attorney Russell Higgins | 16.7 | $400.00 | $6,680.00 |
| | Attorney Steve Mikhov | 6.8 | $500.00 | $3,400.00 |
| **HDMN** | Attorney Larry Castruita | 8.6 | $300.00 | $2,580.00 |
| | Attorney Sepehr Daghighian | 22.0 | $500.00 | $11,000.00 |
| | Attorney Erik Schmitt | 29.6 | $250.00 | $7,400.00 |
| | Paralegal Andrea Plata | 3.2 | $75.00 | $240.00 |
| | | | **Total:** | $54,630.00 |

/////

####  4. Lodestar Multiplier

Next, plaintiff urges this court to apply a multiplier of 0.5 to the lodestar. (Doc. No. 88-1 at 20.) Plaintiff argues that the contingent nature of this litigation warrants a 0.2 multiplier and that the delay in payment warrants a 0.3 multiplier. (*Id.* at 22.) According to plaintiff, "there always existed the possibility that Plaintiff would not prevail" and that "Plaintiff's attorneys advanced all litigation costs and expenses without reimbursement." (*Id.* at 21–22.) FCA argues that an upward multiplier is not warranted here. (Doc. No. 89 at 15–17.) For the reasons that follow, the court chooses to not apply an upward multiplier.

As discussed, the lodestar may be "augmented or diminished by taking various relevant factors into account, including (1) the novelty and difficulty of the questions involved and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; and (3) the contingent nature of the fee award, based on the uncertainty of prevailing on the merits and of establishing eligibility for the award." *Robertson*, 144 Cal. App. 4th at 819; *see also Warren v. Kia Motors America, Inc.*, 30 Cal. App. 5th 24, 35 (2018).

Here, plaintiff does not contend that her attorneys were precluded from seeking other employment, and the court finds that the questions involved in this action were not novel or difficult, nor did the attorneys demonstrate exceptional skill in presenting the issues. Rather, plaintiff argues that "[t]his case required a range of specialized knowledge including: (1) an understanding of the full scope of consumer protection laws, . . .; (2) knowledge of the intricacies of automobiles . . .; and (3) knowledge of auto manufactures' and dealers' policies and protocols for repairing vehicles and complying with their legal obligations." (Doc. No. 88-1 at 16.) However, the fact that plaintiff's attorneys had to become familiar with a case is not the type of novelty or difficulty that ordinarily justifies an upward multiplier. Moreover, as plaintiff admits, "plaintiff's attorneys have acquired knowledge and insight about these [issues] over the course of many years of litigation," and the attorneys do not "spend unreasonable time preparing pleadings because they are able to use documents from other cases that need only be edited." (*Id.* at 17–18.) Indeed, the issues presented by this case have recently been addressed in several cases before this

court, many of which involved the same attorneys who appeared in this action. *See, e.g.*, *Self*, 2019 WL 1994459; *Hall*, 2018 WL 2298431; *Garcia v. FCA US LLC*, 1:16-cv-00730-JLT (E.D. Cal. March 7, 2018). Finally, with respect to the skills displayed by plaintiff's counsel, the court has reviewed the pleadings filed in this action and finds that the skills displayed by counsel were, on balance, average at best, given that it is readily apparent from the face of these pleadings that counsel relied upon pleadings from other actions as templates and that some of their filings here contained references to vehicles, individuals, and issues that had no relation to this action. The court therefore finds that the first two factors that could justify the application of a multiplier are not applicable here because this was a Song-Beverly action of ordinary complexity and difficulty.[4]

Moreover, the court concludes that the contingent nature of this action does not weigh in favor of an upward multiplier. "The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights . . . into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis." *Ketchum*, 24 Cal. 4th at 1132.

> A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans.

*Id.* (citation and internal quotation marks omitted). As an initial matter, the court notes that, at the May 7, 2019 hearing on the pending motion, attorney Daghighian could not represent to the court that neither the Knight Law or HDMN law firms would not be receiving a percentage of the $142,000.00 settlement payment obtained on plaintiff's behalf in this action. Accordingly, the court finds that it would be inappropriate to apply an upward multiplier for contingent risk if the law firms at issue are also receiving a percentage of the settlement fund. However, even if the

---

[4] The undersigned also notes that its comments in this regard are limited to the written work produced by plaintiff's attorneys in this case. Attorney Daghighian, for instance, has tried a Song Beverly Act case before the undersigned and demonstrated notable trial skills in that matter.

law firms did not receive a percentage of the settlement amount, the court would still conclude that an upward multiplier based on the contingent risk is not warranted here because that factor is outweighed by the other factors the court has considered, namely that this case was not novel, complex, or difficult, especially because the disputed facts and issues to be resolved were minimal.

Similarly, the court finds that an upward multiplier due to any delay in payment of fees to plaintiff's counsel is unwarranted here. Plaintiff contends that "FCA dragged this case for thirty-two months . . . [and that] [her] attorneys are not paid at all if they lose, and need to absorb significant delay in being Plaintiff do[es] win." (Doc. No. 88-1 at 22.) Be that as it may, the court is not convinced that (1) FCA is solely to blame for the delay in resolving this action and (2), even if it was, it does not appear to the court that any delay was so egregious so as to justify an upward multiplier.

Accordingly, the court declines to apply an upward multiplier to the lodestar amount under the circumstances of this case.

**B.    Costs and Expenses Request**

Finally, plaintiff seeks an award for costs and expenses incurred by her counsel in litigating this matter. Initially, plaintiff sought $22,488.21 in costs and expenses. (Doc. No. 88-1 at 23.) This initial sum, however, included costs that were properly pursued through a bill of costs, which is processed by the court clerk, as opposed to a motion for attorneys' fees and costs. *See* 28 U.S.C. § 1920; Fed. R. Civ. P. 54(d); Local Rule 242. Accordingly, at the May 7, 2019 hearing on the pending motion, the court instructed plaintiff to refile her request and eliminate from her motion costs reimbursable through a separately filed bill of costs. On May 17, 2019, plaintiff filed a bill of costs that was approved on June 26, 2019. (*See* Doc. Nos. 93, 96.) Now pending before the court is plaintiff's motion for reimbursement of costs and expenses in the amount of $21,921.36. (Doc. No. 94-1 at 2.) FCA contends that the costs sought should be reduced by $10,658.89, arguing that: travels costs sought by plaintiff were unreasonable and unnecessary; some costs purportedly incurred are not supported by receipts or invoices; and plaintiff's expert witness fees are excessive and unreasonable. (Doc. No. 95.)

16

The court does not find FCA's general arguments that the costs and expenses claimed are excessive, unreasonable, or unnecessary to be persuasive. Plaintiff's travel costs incurred were reasonably incurred in prosecuting this action. The court will however reduce the costs and expenses award by $84.20, to account for the few copying, parking, and meal expenses unsupported by any receipts or invoices. The court has reviewed the records for the remaining costs and expenses sought by plaintiff and finds them to be reasonably incurred. Accordingly, the court concludes that plaintiff is also entitled to a total of $21,837.16 in reimbursements for costs.

**CONCLUSION**

For the reasons set forth above:

1. Plaintiff's motion for attorneys' fees and costs (Doc. No. 88) is granted in part;
2. The court awards $54,630.00 in attorneys' fees based on the lodestar analysis; and
3. The court awards total costs in the amount of $21,837.16.

IT IS SO ORDERED.

Dated: **October 17, 2019**

_Dale A. Drozd_
UNITED STATES DISTRICT JUDGE